# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAMON BRITO, Plaintiff | No. 3:08cv1673 |
| v. | (Judge Munley) |
| UNITED STATES DEPARTMENT OF JUSTICE, MICHAEL MUKASEY, ATTORNEY GENERAL; HARLEY G. LAPPIN, DIRECTOR OF THE BUREAU OF PRISONS; JERRY MARTINEZ, WARDEN; P.A. BRADY and AHSA POTOPE, ALLENWOOD MEDICAL STAFF, Defendants | |

## **MEMORANDUM**

Before the court for disposition is the defendants' motion to dismiss or, in the alternative, motion for summary judgment in this prisoner civil rights case involving medical treatment. The matter has been fully briefed and is ripe for disposition.

**Background**

Plaintiff Ramon Brito (hereinafter "plaintiff") is a federal prisoner who is incarcerated at the Allenwood Low Security Correctional Institution, in White Deer, Pennsylvania. ("LSCI Allenwood") (Doc. 1, Complaint, at 1). In the beginning of September 2006, plaintiff injured his left hand pinky finger. (Id. at 3). Brito reported to the prison's Health Services on September 5, 2006 for treatment of the injury. (Doc. 16-4, Declaration of James Potope at ¶ 3 and Attachment 1, thereto, Chronological Record of Medical Care). Health Services ordered an x-ray of the finger and provided plaintiff with pain medication. (Id.) The x-ray was taken the next day and revealed a fracture of the plaintiff's finger. (Id.) The medical staff splinted and wrapped the finger for immobilization. They instructed plaintiff to avoid

overuse of it and to keep the finger immobile. (Id.) They also provided plaintiff with more pain medication and ordered a follow-up x-ray to be performed in four (4) weeks. (Id.)

A follow-up visit to Health Services occurred on October 3, 2006. (Id. at ¶ 4). Examination revealed that plaintiff had intact range of motion (hereinafter "ROM") and sensation in his fingers. He also had mild swelling and good capillary refill. (Id.) A follow-up x-ray was performed that day, which revealed "normal mineralization" and "osseous structures intact." (Id. at ¶ 4 and Attachment 3 thereto, Omnimed Medical Services Memorandum). Health Services directed plaintiff to follow-up if he had increased pain, to continue wearing his splint, to avoid further trauma and to continue his pain medication as needed. (Id.) They also indicated that a follow-up x-ray would be scheduled. (Id.)

A follow-up examination and instruction on ROM exercises occurred on October 12, 2006. The ROM exercises were meant to prevent the finger from becoming stiff. (Id. at ¶ 5 and Attachment 4, thereto, Chronological Record of Medical Care). Plaintiff requested an extension of his work convalesce, which was granted on October 19, 2006. (Id.)

Health Services saw plaintiff again on October 25, 2006. He admitted that he was not performing his ROM exercises. He was informed that he must do the exercises to avoid complications. (Id. at ¶ 6, Attachment 5, thereto, Chronological Record of Medical Care).

Another x-ray was performed on plaintiff's hand on November 1, 2006. The x-ray showed that the fracture, although still present, was healing. (Id. at ¶ 7). Plaintiff again indicated that he was not doing his ROM exercises and was reminded again of the importance of the exercises

to avoid complications.  (Id.)

During subsequent visits to Health Services, plaintiff repeatedly admitted that he was not doing the ROM exercises.  (Id. at ¶¶ 9-13, 15). These visits occurred on November 15, 22 and 29, 2006; December 6 and 22, 2006 and January 4, and 26, 2007.  Plaintiff was repeatedly reminded of the importance of the exercises.  (Id.)

The pinky finger began to develop "retraction" due to the failure to perform the exercises.  (Id. at ¶¶ 11-13).   Over the course of the next several months, during multiple visits to Health Services for treatment of the finger the situation remained the same.  Plaintiff admitted to not doing his ROM exercises, he was reminded of the importance of the exercises and his injured finger continued to develop retraction.  (Id. at ¶¶ 15 - 18).

In April 2007 and June 2007, plaintiff was seen by two different orthopedic specialists.  In April, Dr. Thomas F. Dominick examined him and in June, Dr. David J. Ball examined him.  (Id. at ¶¶ 19 - 20).  These specialists indicated that plaintiff had been non-compliant with his ROM exercises that led to contracture in his finger.  (Id.).

Based upon the medical treatment he received for his finger, plaintiff filed the instant lawsuit alleging a violation of his constitutional right to be free from cruel and unusual punishment[1] in that the defendants exhibited deliberate indifference to his serious medical needs.  He claims that the prison inadequately treated his finger, causing him permanent damage.

---

[1]U.S. CONST. AMEND. VIII; see  Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971) (holding that a violation of an individual's constitutional rights by a federal agent acting under color of his authority gives rise to a cause of action for damages).

3

He seeks monetary damages of two million dollars. (Doc. 1, Complaint at 7).

In response to the complaint, the defendants have moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment. The parties have briefed their respective positions, and the matter is ripe for disposition.

**Jurisdiction**

We have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). We also have jurisdiction under 28 U.S.C. § 1346(b)(1) ("The district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.").

**Standard of review**

    **a. Motion to dismiss under rule 12(b)(6)**

When a 12(b)(6) motion is filed, the sufficiency of a complaint's allegations are tested. Granting the motion is appropriate if, accepting as true all the facts alleged in the complaint, the plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," or put another way, "nudged [his or her] claims across the line from conceivable to plausible." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

The Third Circuit interprets <u>Twombly</u> to require the plaintiff to describe "enough facts to raise a reasonable expectation that discovery will reveal evidence of" each necessary element of the claims alleged in the complaints. <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 234 (3d Cir. 2008) (quoting <u>Twombly</u>, 550 U.S. at 556). Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation." <u>Id.</u> at 234-35.

In relation to Federal Rule of Civil Procedure 8(a)(2), the complaint need only provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" <u>Twombly</u>, 550 U.S. at 555 (citation omitted). "[T]he factual detail in a complaint [cannot be] so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." <u>Phillips</u>, 515 F.3d at 232 (citation omitted). "Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief." <u>Id.</u>

The issue is whether the facts alleged in the complaint, if true, support a claim upon which relief can be granted. In deciding a 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and give the pleader the benefit of all reasonable inferences that can fairly be drawn therefrom, and view them in the light most favorable to the plaintiff. <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). However, "we are not bound to accept as true a legal conclusion couched as a factual allegation." <u>Ashcroft v. Iqbal</u>, -- U.S. --, 129 S. Ct. 1937, 1949-50 (2009) (internal quotations omitted).

To decide a motion to dismiss, a court generally should consider only

5

the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.  See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

### b. Motion for summary judgment

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion.  International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986).  A fact is material when it might affect the outcome of the suit under the governing law.  Id.  Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to

6

admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**Discussion**

Defendants address the claims made against the various defendants and assert that all plaintiff's claims should be dismissed, or summary judgment granted to the defendants on plaintiff's claims. We will address defendants' arguments *in seriatim*.

**1. Defendant Harley G. Lappin and Defendant Michael Mukasey**

First, the defendants contend that dismissal is appropriate as to Defendant Michael Mukasey, former United States Attorney General; and Defendant Harley G. Lappin, Director of the United States Bureau of Prisons. After a careful review, we agree.

A prison official's deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment to the United States Constitution. Estelle v. Gamble, 429 U.S. 97, 103 (1976). This is because the government has an "obligation to provide medical care for those whom it is punishing by incarceration." Id. In order to establish an Eighth Amendment violation based upon medical treatment, a prisoner "must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden County Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (citing Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)). In analyzing

7

deliberate indifference, a court must determine whether the prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 841 (1994). A prisoner plaintiff must prove that the prison official "knows of and disregards an excessive risk to inmate health or safety." Id. at 837.

A claim of violation of a constitutional right, however, cannot be premised on *respondeat superior*, or "supervisory liability." Ashcroft v. Iqbal, -- U.S. --, 129 S. Ct. 1937, 1949 (2009) ("Respondent's conception of 'supervisory liability' is inconsistent with his accurate stipulation that petitioners may not be held accountable for the misdeeds of their agents. In a § 1983 suit or a Bivens action – where masters do not answer for the torts of their servants – the term 'supervisory liability' is a misnomer."). To establish liability for deprivation of a constitutional right plaintiff must demonstrate personal involvement by defendant. Rode v. Delarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Such involvement may be established through: 1) personal direction or actual participation by the defendant in the misconduct; or 2) knowledge of and acquiescence in the misconduct. Id.

In the instant case, the plaintiff makes no allegations of personal involvement by either defendant Lappin or Mukasey. The complaint contains no allegations that these two defendants had any direct involvement in the plaintiff's medical treatment. In fact, in his brief in opposition to the defendants' motion, plaintiff admits that there was no personal involvement by these defendants. (Doc. 19, Plaintiff's Brief, at 9). Accordingly, Lappin and Mukasey will be dismissed from the case.

**2. Defendant Jerry Martinez**

Plaintiff also seeks to hold Defendant Jerry Martinez, the warden at

LSCI-Allenwood, liable for constitutional deprivations. Plaintiff filed administrative claims at the prison regarding his medical treatment. To support his claim against Martinez, plaintiff cites to a response he received on his administrative claim. Initially, plaintiff claimed the response was from Defendant Martinez. The response, however, is actually signed by R. Martinez, not Jerry Martinez. (Doc. 1 at Exhibit C, page 16). Plaintiff concedes that Jerry Martinez should be dismissed from the claim. (Doc. 19, Plaintiff's brief at 13). Accordingly, Defendant Jerry Martinez will be dismissed.

Plaintiff seeks to add R. Martinez to the complaint. Defendants argue that such an amendment would be futile as plaintiff cannot allege a valid claim against R. Martinez. The sole allegation that plaintiff makes against R. Martinez is that he denied his request for an administrative remedy. R. Martinez is not alleged to have treated plaintiff. A non-physician defendant cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints when the inmate is already receiving treatment by the prison's medical staff. Durmer, 991 F.2d at 69. Accordingly, R. Martinez could not be liable for any constitutional violation and we will not allow plaintiff to add him as a defendant.

### 3. Medical staff defendants, Dr. Jim Brady and James Potope

The final two defendants that plaintiff asserts a cause of action against are Defendants Brady and Potope, the actual medical staff that treated him. As noted above, in order to assert an Eighth Amendment/inadequate medical treatment claim against these defendants, plaintiff "must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v.

Camden County Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (citing Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)). For the purpose of the instant motion, it appears that the parties do not dispute that plaintiff had a serious medical need. Therefore, we must only determine whether defendants' actions indicate deliberate indifference to plaintiff's medical needs.

In analyzing deliberate indifference, a court must determine whether the prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 841 (1994). A prisoner plaintiff must prove that the prison official "knows of and disregards an excessive risk to inmate health or safety." Id. at 837. A mere complaint that medical staff have "been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical mistreatment does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. See also Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993) (inadequate medical treatment resulting from negligence is not a constitutional violation). Medical malpractice does not rise to the level of deliberate indifference under the Eight Amendment. Parham v. Johnson, 126 F.3d 454, 458 n.7 (3d Cir. 1997). An inmate's disagreement with the course of treatment taken by a physician does not constitute deliberate indifference. White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).

An examination of the record in the light most favorable to the plaintiff reveals that the medical staff defendants were not deliberately indifferent to his medical needs. As set forth more fully above, the defendants saw the plaintiff many times to treat his finger. He received appropriate diagnostic

10

testing, that is, x-rays, several times. He was provided with a splint for the finger and instructions to perform ROM exercises. The medical records, including the orthopedic specialist records, indicate that plaintiff's finger did not heal properly due to his failure to perform the exercises as directed. Accordingly, the plaintiff has not established deliberate indifference on the part of these defendants.

It is evident that this case involves a disagreement over medical treatment, not a deliberate indifference to the medical needs. In fact, the plaintiff repeatedly mentions that he disagreed with the treatment he was receiving, and that it was negligent treatment. Such allegations, however, do not rise to the level of an Eighth Amendment violation. See Parham, *supra*, and White, *supra*. We will, therefore, grant summary judgment to Defendants Brady and Potope.[2]

**Conclusion**

For the foregoing reasons, the defendants' motion to dismiss and for summary judgment will be granted. An appropriate order follows.[3]

---

[2]Defendants treat plaintiff's complaint as if it asserts causes of action against other defendants such as the United States Department of Justice and the "Allenwood Medical Staff." Based upon the complaint, however, we conclude that the only defendants are those we have addressed in this memorandum. (See Doc. 1, Complaint at ¶ 3.a. - 3.d). Although the plaintiff does use the terms "The Department of Justice" and "Allenwood Medical Staff" it appears that they are used merely to help identify the actual defendants.

[3]Plaintiff has also filed a document entitled "Emergency Motion on Request for Protection." This motion asserts that the defendants are retaliating against him for filing this lawsuit and a related lawsuit brought pursuant to the Federal Tort Claims Act. The issues raised in this motion are not part of this case and arose after this case was filed. It shall

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RAMON BRITO, Plaintiff

v.

UNITED STATES DEPARTMENT OF JUSTICE, MICHAEL MUKASEY, ATTORNEY GENERAL; HARLEY G. LAPPIN, DIRECTOR OF THE BUREAU OF PRISONS; JERRY MARTINEZ, WARDEN; P.A. BRADY and AHSA POTOPE, ALLENWOOD MEDICAL STAFF, Defendants [4]

No. 3:08cv1673

(Judge Munley)

## ORDER

**AND NOW**, to wit, this 15th day of March 2010, the defendants' motion to dismiss and for summary judgment (Doc. 16) is hereby **GRANTED**. The plaintiff's "Emergency Motion on Request for Protection" (Doc. 28) is **DENIED**. The Clerk of Court is directed to close this case.

**BY THE COURT:**

**s/ James M. Munley
JUDGE JAMES M. MUNLEY
United States District Court**

---

[4] therefore be denied.